is Abirahman Salah Warsame v. U.S. Attorney General, Case No. 17-13849. Mr. Watt. Good morning, Your Honors. May it please the Court, my name is Brian Watt and I, along with my colleagues David Dantzler and Bianca DiBella from Troutman Sanders, are pro bono counsel to the petitioner in this case, Mr. Abdirahman Salah Warsame. Your Honors, this appeal arises out of the wrongful denial of Mr. Warsame's asylum application and the Board of Immigration Appeals' subsequent affirmance of that decision. This asylum case, a case brought by Mr. Warsame pro se, is fundamentally a political opinion case. It's a political opinion case that the immigration judge, on her own, converted into a case that hinged on the applicant's particular social group, which, of course, the immigration judge defined sua sponte, in a way that was doomed to fail. This Court should vacate and remand for further proceedings for at least two reasons. Number one, the immigration judge and the Board of Immigration Appeals failed to acknowledge that Mr. Warsame's pro-government, pro-education, anti-al-Shabaab advocacy was a central and, indeed, an essential reason for the death threats, harassment, and torture that he suffered at the hands of al-Shabaab. And number two, the evidence in the record demonstrates that Mr. Warsame suffered persecution because of his membership in a particular social group defined not by his chosen profession, but by his family relationships or kinship ties. As a threshold matter, this record, the record in this case, is replete with evidence of past persecution. The evidence of death threats, targeting, harassment, and terrible torture by al-Shabaab was found to be credible by the immigration judge and is therefore taken as established fact for purposes of this appeal. Where the immigration judge erred was in failing to see the clear link between the cumulative violence and persistent death threats that Mr. Warsame suffered and the protected ground that motivated those acts of violence, namely Mr. Warsame's political opinion. The immigration judge refused to acknowledge or perhaps even recognize that Mr. Warsame's political opinion was at least one central reason for the abuse he suffered at the hands of al-Shabaab. Mr. Warsame's death threats and violence. The evidence on this point is both abundant and found throughout the record. Is your argument that the IJ and then the BIA misconstrued his political opinion arguments as social group arguments? Your Honor, the immigration judge and the Board of Immigration Appeals just failed to acknowledge that his political advocacy, his anti-al-Shabaab ideology was political opinion. Instead, the immigration judge focused on his chosen profession, that being a teacher. Of course, his choice to be a teacher, as the record demonstrates, was simply an expression of that anti-al-Shabaab ideology. He used his platform as a teacher to spread his pro-government, pro-education, anti-al-Shabaab ideology. Did al-Shabaab, when they contacted him, say something about his political opinion? Yes, Your Honor, they did. Okay. Every time that they did something to him? Every time he gave a public speech or a seminar condemning al-Shabaab, al-Shabaab would contact him, make death threats, and in many instances mention the fact that he had made anti-al-Shabaab statements. That is in the record. They killed his father. Excuse me? They killed his father, at least that's what he says. That is correct. That is one of the incidents that demonstrates that al-Shabaab was targeting Mr. Warsame. Well, I'm sorry, he didn't, his father wasn't killed. That was actually a point that he had to clarify during the hearing. His daughter and another relative passed away from that attack. From that 2007 bombing, that's correct. His daughter and his sister were both killed in that attack and his father was gravely wounded. And that was no random act of violence either. Despite the characterization by the government that this was some sort of random criminal element, the evidence in the record shows that he was targeted even before that and received death threats prior to that 2007 bombing that were directed to him specifically. Al-Shabaab called him and said, we're going to kill you and your father. So they linked the two together and made death threats prior to that bombing. But your argument is that he was targeted for two reasons. One, his kinship ties with his father, and two, his own independent political views. Is that correct? Correct, just one small clarification. His own political opinion was certainly one of the bases, but there's also an imputed political opinion. There's evidence in the record to show that Al-Shabaab attributed to Mr. Warsami the outspoken anti-Al-Shabaab position of his father and therefore attributed that political opinion to him. So the political opinion we would contend includes both the imputed political opinion and his actual anti-Al-Shabaab outspoken advocacy. I think the government has said that since the children apparently were also targets of certain of these attacks and you wouldn't be able to impute political opinions to children, that demonstrates that the attacks were on a kinship basis rather than imputed political ties. What's your response to that? Well, Your Honor, I think it's actually both. There was plenty of evidence in the record to suggest that he was targeted because of his father. In fact, there are numerous incidents in the record where Mr. Warsami testified that he was threatened by Al-Shabaab and in fact that 2014 torture that he endured was, in his words, quote, because of my father. They had been looking for his father who was a prominent federal police officer and they oftentimes target the family members of those police officers as well. So they recognized him, they captured him, they tortured him by burning his genitalia and he only escaped that because a Klan leader who learned that he was being tortured in his house intervened on his behalf and convinced them to let him go. And what are the cases that support the qualification for asylum based on targeting because of a family member? Your Honor, this circuit has not actually defined a particular social group in terms of kinship ties. There is, however, 30 years of Board of Immigration Appeals precedent, starting with the matter of Acosta, that demonstrates that family relationships, kinship ties, have been a valid basis for defining a particular social group. This Court, in fact, in Diaz-Rivas earlier this year, seemed to acknowledge, perhaps indicative, this Court did not decide this issue, but seemed to acknowledge that the family basis for the particular social group in that case could have supported a claim for persecution on account of a protected ground. You'll probably also recall from that case that it noted that apparently the DOJ is currently considering the question of whether familial ties can constitute a social group. Are you aware of whether the, whether DOJ has announced any view on that at this point? As of our recent check a few days ago, no, Your Honor, there hasn't been any announcement on that decision, nor does the fact that the Attorney General referred the matter to itself, I believe, give grounds for this Court to say it's consideration of this case. Family ties have been a basis for defining a particular social group for, like I said, more than 30 years. I guess one reason I'm asking you whether, a second reason, a second independent reason for this persecution, whether you've argued that his own political views have been a factor, is because I don't think there's any dispute about whether someone's own political views would qualify as a basis for asylum, whereas there are at least some questions about the family ties, about the family ties approach. If that's a, I'm sorry, I don't quite understand the question. It was more of a statement, you're right, but given that there are some questions, at least germinating with respect to the family ties, wouldn't you be better off focusing on, if you believe it's true, Mr. Warsami's own political opinions as a reason that he was being targeted? Absolutely, Your Honor, which is why I started with that. The political opinion that he himself espoused, his anti-al-Shabaab ideology. The record indicates that he was a public figure, that he had a reputation among his colleagues as an anti-al-Shabaab advocate, and that he was targeted because of his work educating the youth and speaking out against al-Shabaab. Again, the death threats would resume every time that he gave one of these public speeches or seminars condemning al-Shabaab. In his Board of Immigration Appeals brief, he described the threats that he received from al-Shabaab as originating from the fact that he was, quote, spreading the anti-al-Shabaab opinion through his teachings. And that is why this case, this Warsami case, is very much like and should be controlled by this court's 2008 decision in De Santa Maria v. United States Attorney General. In the De Santa Maria case, this court concluded, quote, with little difficulty that the record compelled a finding of past persecution based on political opinion. In Santa Maria, the asylum applicant was an outspoken critic of the revolutionary group in Colombia known as the FARC. Like Ms. Santa Maria, Mr. Warsami was an outspoken critic of al-Shabaab, and he openly and publicly preached in support of the Somalian government and against that insurgent group al-Shabaab. Ms. Santa Maria's life was repeatedly threatened by members of the FARC, and they told her that she would be killed if she didn't stop her pro-government advocacy work. The same is true here. Mr. Warsami was threatened by al-Shabaab every time he spoke out against them. Each time Ms. Santa Maria resumed her advocacy, the threats would resume. Similarly, Ms. Santa Maria was kidnapped by the FARC, tortured, beaten, and told she would be killed in a remote FARC camp. She was only freed from that when the FARC intervened and set her free. Likewise here, Mr. Warsami was captured by al-Shabaab, tortured, told he would be killed because of that work, and in both cases, in the Santa Maria case and in this case, the asylum applicants were found to be credible by the immigration judge. In Santa Maria, this court corrected the immigration judge's determination that there was no persecution on account of a protected political ground and held that, taken together, the incidents of violence that Ms. Santa Maria endured constituted the sort of extreme mistreatment that qualified as past persecution. The same result should obtain here. Did the BIA and the IJ decide that your client could safely relocate within the same country, Somalia? Yes, Your Honor. That was a determination by the immigration judge that, again, is contrary to the evidence in the case. The country reports that the immigration judge actually pointed to as supporting this notion that he could relocate safely say the opposite. They actually say that al-Shabaab had a pervasive reach throughout the country, and that's a quote from those country reports, throughout the country. But they've changed governments. They've got a new president or something like that. That was as of 2012, and again, the fact that there was a turnover in the government, the fact that the United States was being called on to help try to stabilize that government and economy is actually more evidence that it was an unstable and unsafe place for Mr. Warsami to relocate. His family's in another place, and they've not been attacked, right? Well, Your Honor, the evidence on that is actually unclear. Mr. Warsami didn't know where his family was. He believed that some of his family had made it to a Kenyan refugee camp. He did not know where his wife and daughters were. But it's important to note here that his wife and daughters are members of the majority clan, and the evidence in the record does suggest, in fact, clearly states that as a member of the majority clan, it was much easier for them to move around and seek protection from those majority clan leaders from al-Shabaab. It was his father-in-law who was a member of that majority clan who, according to Mr. Warsami's testimony, gave him money and told him that his best option was to leave. That's exactly right, Your Honor. In fact, that's the reason he left his wife and children, was to go seek an education so that he could perhaps make a better life for his entire family, to take his wife and children with him. But it was his father-in-law who said, you need to leave. You're the reason that this threat has fallen upon our family. All right, Mr. Watt. Thank you very much. You've saved your time for rebuttal. Ms. Browning. May it please the Court, Rachel Browning for the respondent. The record evidence in this case does not compel the sole conclusion that Petitioner met his burden of establishing a well-founded fear of persecution on account of a protected ground. The only issue that's been preserved for review is that of the imputed political opinion based on his relationship with his father. Petitioner, to the extent that he seeks to reframe his claim as one of an actual political opinion related to him being a teacher or a new particular social group based on kinship ties, neither of those claims were presented to the immigration judge nor to the Board in his appeal. Whenever he was asked about— Your Honor, the judge discerned that to be his particular social group based on his written statement that he provided along with his asylum application in which he said that he was targeted based on his membership in a particular social group of Somalia teachers whose activities were strongly opposed by al-Shabaab. That's how he framed his particular social group. But that's not how the IJ framed it, right? She framed it somewhat differently with those contours. Because the way you just described from his own filings suggests that the teaching is part of it, but it's also the message of being anti-al-Shabaab, right? And the way the IJ framed it was—had nothing to do with al-Shabaab. It was just that he was a teacher who was teaching the Western way with Western values. Because that's what he told her, Your Honor. That's a big difference, right? But that's what his statements were. That's not all of his statements, though. Despite inconsistencies in his testimony and despite the IJ saying at times that he had lied, the IJ found him to be credible, right? Correct. And he testified that at least in part that he was targeted by al-Shabaab because of his opposition to that group, did he not? That was part of his testimony, but he also testified that al-Shabaab targets anybody who is opposed to their group. They target civilians. They target government workers. That's why his father was targeted. That doesn't matter, though. But if he's to say that he's going to be singled out— If you are part of a group who is targeted in a country because of political opinion, and your group is big because there are a lot of people who share that political opinion, the size of that group doesn't mean you can't qualify for asylum, right? It doesn't necessarily, but what the judge concluded was that this targeting had more to do with the beliefs of al-Shabaab and not the victims. How can you separate those two things? If al-Shabaab is taking action against somebody because of what they believe, aren't they taking action against someone because those people believe the opposite and oppose them? But if you follow this court's reasoning in Sanchez and the Supreme Court in Elias Zacharias, just because you're opposed to something that a group stands for doesn't mean that the group imputes to you a political opinion, that it's an expression of political opinion. This is more about a group exerting power and control, in this case territory. So they don't want people teaching Western education because that undermines their control. They don't want police going after their criminal activity because that threatens their control. It's about al-Shabaab, and when you look at this cumulatively, there's simply not enough on this record to establish that when Petitioner returns to Somalia that he will be singled out for persecution on account of a protected ground. He was barely in Somalia. You really believe that in light of... His family suffered a missile attack, which killed two members of his family, severely injured his father, who was a federal police officer. Because they attacked the police station. Of course they attacked the police station because that's where they lived. The housing was on top of the police station. It's not like the police station was here and the place they lived was a mile away and they attacked the police station. I just think you're drawing lines that are way too fine. The police station was the home because the police station was the first level and the home was the second level of the structure. And I'm no expert on guided missile systems, but if you're attacking with a missile, you're going to hit the building. You think you can comfortably say that if he goes back to Somalia, he's not in danger of being persecuted because of his political opinion? I'm simply saying that the protected ground has not been established. I'm not comfortable at all with anybody going to Somalia. I'm not going to pretend like it's a safe place. I'm just trying to explain the basis for the judge's decision and the board's decision. And the way Petitioner framed his claim was if you go back to... Going all the way back to his credible fear interview, I didn't have any particular opinions or political beliefs. I was attacked because of my father's position. My family is an apolitical opinion, he says in his declaration, and that al-Shabaab targets everyone against them. And also in his declaration, they target civilians based on their view that anyone who does not or refuses to support their extreme religious views is against them. I'm saying that cumulatively, the judge found that there is indiscriminate violence brought about by al-Shabaab, that it is dangerous, but that because of the new government and assistance of the U.S. government and international partners in the region, they have been successful in taking back territory. There are places that he could return safely. Do the IJ or the BIA really consider whether there are places, consider the evidence that he offered that he could not return safely to any location in Somalia? Your Honor, honestly, the evidence on this point is vague, because yes, there's inter-Klan violence. And based on the Klan that he identified himself before the board, there's nothing specific to that in the record. The record, the documents that he provided really speak to the more generalized violence. There have been multiple bombings of various places in Somalia over the last 10 years, and that's all represented in the record. But there's simply not enough specific to petitioner, I think is what the judge and the board, the conclusion that they came to. You know, if the IJ had credited the initial statements he made, for example, at the credible fear interview over the testimony he provided at the hearing, I think you'd, from my perspective, you'd be in a stronger position. But that's not what the IJ did. She did look at that evidence, though, Your Honor. Of course she did. But she credited his testimony at the evidentiary hearing. And I don't know. This is a case that, we often have cases where the IJ decides that a person is not in part, right? This is not one of those cases. We also have cases where the alleged persecution, as bad as it may be to someone in a civilized society, doesn't rise to the level that's required to obtain asylum in this country. I don't know. From my perspective, this is a rare case where the IJ found the petitioner credible. He suffered horrible persecution. He alleged that it was in part due to his political opinion, not just that he was a teacher, but that he was advocating against what al-Shabaab stood for, and that he was targeted not only because of that, but because of his father's position as a federal police officer, and also an opponent of al-Shabaab. That doesn't strike you as the ingredients for an asylum claim? I think it's akin to the types of claims like this court addressed in Castillo, where you have a group of people going against a criminal organization. In that case, it was a drug organization. In this case, it's al-Shabaab. And the reason for the persecution, again, has more to do with the organization itself than the people going against them and trying to, it's about control, not about a specific political opinion. But a drug organization doesn't necessarily have an ideology except money, whereas al-Shabaab is sort of a different sort of animal, right? Because it is also concerned about power and money and control, but also has a pretty powerful moral, social, religious ideology, does it not? That's true, Your Honor. But that doesn't change the way the claim is weighed itself. That still the political opinion has to be that of the victim and not the persecutor. The fact that al-Shabaab is an ideological bent, I don't think that changes the calculus. It didn't for the judge and the board. So that's why they came to the conclusion that they did. But again, should the court disagree? Number one, I want to point out, you were going on about the past persecution. The board didn't actually address whether the harm that petitioners suffered rose to the level of past persecution. And so should the court determine that that's a necessary finding, the case would need to go back to the board to address that in the first instance. The board decided the case solely on the nexus ground, that his social group wasn't cognizable and that he hadn't established imputed political opinion was the reason for the persecution. So, and... Do you think that imputed political opinion would be sufficient if it were shown? I think there just needs to be more evidence of that. It's, again, it was... Right, but just setting aside the facts of this case, would you say in another case where imputed political opinion were clearly demonstrated that that would be sufficient to establish that element? If, I'm not sure I... Is it, is imputed, is your argument that imputed political opinion is never enough or that imputed political opinion was not shown here? Oh, no, no, I'm just saying on this record, there's just not enough information to establish that Al-Shabaab wrongly imputed a political opinion to the petitioner and persecuted him because of that. And that's what this court has said is required to do. And in its decision in Sanchez, and I believe in Castillo and Sidenhas, and I think it's pronounced, sorry, Sidenhas Rodriguez, you were talking about family members of someone who sought criminal justice against a drug organization. And in that case, it was framing it as a particular social group. Um, so, but it's similar because it had more to do with the drug organization than the group itself. And the group was being defined solely by its, the likelihood that it would be targeted by the organization. What about purely the question of kinship ties? And again, in another case, set aside from the facts of this case, if it was established that a person was persecuted because of their ties to their family member, would that be sufficient? Generally speaking, yes. I mean, the board has recognized kinship ties. It's a bit up in the air at the moment, but it's possible. And the court did consider that question in Sidenhas and found that there was no way to frame the group, even if it's a family, without the distinguishing characteristic being the risk of persecution. And so I think you would run into that same problem here. If the court were to get that far. But again, that's really something that the board should address in the first instance, since it did not. And really didn't have any reason to, because what he argued to the board was the same things that he argued before the IJ in terms of how he framed his claim. So the question really is, should the board have gleaned something different, you know, based on what he argued? But he was pretty specific and pretty clear. It was a very lengthy brief. And so I think the board looked at the evidence presented in the brief and what the judge had said and affirmed on those grounds. Did the BIA frame the group exactly like the IJ? Or shifted a little bit? The BIA framed it the way he presented it in his brief. Okay. Which was a little bit different than what the IJ had done. It was a modification, Your Honor, but basically the same contours of his being targeted as a teacher. What was the basis on which the BIA found he could relocate safely in another place in the country? The BIA didn't give too many details on that, Your Honor. It simply referred to the IJ's findings, which were that, you know, according to State Department reports, the Somalian government has managed to take back territory. There's also evidence in the record indicating that the UN, that the government is working with the UN High Commissioner for Refugees on helping return displaced persons and returning refugees. So that was, the fact that the government has not been 100% successful is not what's required, but it's that they are making strides. Is the fact that some people can go back enough to show that a petitioner can go back? I think they look at the record as a whole. Again, on this, the evidence that petitioner submitted himself, there was sufficient evidence to see, to think that he could find a place to relocate. Does it matter in that relocation analysis that regardless of whether or not he can meet the requirements for asylum, he's been targeted before by a certain group like al-Shabaab? If he hasn't established past persecution on account of a protected ground, then it's his burden to establish that there's nowhere safe for him to relocate. Right, but there's no, there's, it's one thing to say, he has not met the asylum requirements for the reasons you've given. It's quite another thing to say that the events that he endured, which the IJ found credible, shouldn't be taken into account in looking at the relocation issue. You understand what I'm saying? That, yes, but again, those events, even if those events don't get you to asylum, how are they relevant, if at all, in the relocation analysis? The relocation analysis, I think there still has to be evidence that you would be singled out, that there's nowhere you could relocate. If you hadn't met that burden initially, then the relocation argument really doesn't come into play. I think the judge was just sort of giving an alternative finding or an alternative reason for denial. Okay, thank you very much. Thank you. I'm sure you have things that you want to say, so I hope that my colleagues will let you go a little bit over because I'm starting with this question, but has Mr. Warsami been removed already? That is correct, Your Honor. Mr. Warsami was removed during the briefing of this case. Was any motion for a, was any stay requested? No, Your Honor, a stay was not requested. He had been in detention for two years, had recently received news that his father's health was failing, and so he decided not to fight any removal should it come during the appeal here, and he was removed, I think it was June of last year. Now, he did ask us to continue with this case. He is, we have been in touch with him subsequently, and he actually held out hope that the case would be resolved before he was removed, but he has been removed, and his, actually, his current whereabouts are unknown. Your Honor, I want to point out just a couple of things that ... Do we know he's in Somalia? As of April, he was. He was, he had reunited with his wife and daughters and was trying to get them back to the Kenyan refugee camp where other members of his family had been for several years. Your Honor, I want to note one thing briefly. We described in our brief the striking parallels between this case and this court's prior decision into Santa Maria. The government chose not to respond to that argument in their response brief, and they haven't mentioned it here today. The Santa Maria case is remarkably similar. It's about political opinion, and based on its protection under the asylum laws based on persecution because of a political opinion. So I just wanted to point that out. The other point, Your Honor, Judge Jordan mentioned that the persecutor's ideology is a factor here. This is not some criminal element that we're talking about that is motivated by money. This is al-Shabaab. This is an ideological terrorist organization that sought out, targeted Mr. Warsami specifically from well before 2007 on up through 2015 when he was finally convinced that he could no longer live safely in the country. Finally, the issue of whether he could relocate. The government seems to have stated that it was a matter of whether al-Shabaab controlled parts of the country. That is not the right standard. It's whether he would be persecuted if he went back to certain parts of the country. Even if al-Shabaab wasn't the de facto government in certain small pockets of the country, the country reports that a record evidence here made clear that their reach was countrywide. So he was facing a threat of persecution and perhaps death should he go back. And as far as the burden is concerned, the burden only shifts to Mr. Warsami to prove that he wasn't able to relocate if the government meets their burden first. In other words, once we've proven the past persecution on account of a protected ground here, political opinion, that burden shifts to the government to show that it was reasonable that he could relocate there without a threat. The government put on no evidence to that effect. In fact, the immigration judge was so effective in her advocacy on the government's part that when she asked the government if they had any questions, the response was no questions, Your Honor. The immigration judge essentially did her job for her. There are no further questions. Thank you. All right, thank you. Mr. Watt, on behalf of the court, I want to thank you and the firm for taking this case on pro bono. It certainly has been a benefit to us and certainly to Mr. Warsami. We appreciate it. Thank you, Your Honor. And I'd also like to thank Mr. Bill Hoffman and John Fleming and Emily Wright who made significant contributions. Thank you. All right, we're in recess until tomorrow morning.